That the Stanislawski case shall now be submitted and will... What's the date? I think the next case on the argument calendar is Pacific Source... Pacific Source Health Plans v. Atlantic Specialty Insurance Company and for the appellant. We have Mr. Christian Jones and for the appellee we've got Martha Sheehy. So welcome to both of you. Mr. Jones, please proceed. And as I indicated earlier, if you'd like to make a rebuttal argument, please stop before all your time is up. Thank you, Your Honor. May it please the Court, Christian Jones on behalf of the appellant Atlantic Specialty Insurance Company. I may at times during the argument out of habit refer to my client as ASIC, the acronym for that. The issue in this case is whether the appellee Pacific Source Health Plans should be permitted to obtain insurance coverage through a default judgment that it never could have obtained it if it had been forced to litigate its claims on their merits, even though the entry of default judgment was the result of excusable neglect by Atlantic Specialty. The district court's order denying Atlantic Specialty's motion to set aside that default judgment should be reversed because ASIC demonstrated that it has meritorious defenses to Pacific Source's claims for insurance coverage and because there was no finding and no evidence that Atlantic Specialty acted intentionally or in bad faith when it failed to timely respond to the complaint filed in the district court. Counsel, the parties have briefed this as a question of federal law and because it's procedural, I assume that Montana law does not apply to this analysis? That's correct, Your Honor. The district court did base its decision in finding a lack of excusable neglect in part on Montana statutes relating to service of property. That was confusing to me a little bit, but what law governs our decision? This is a matter of federal procedure, and the federal rules of civil procedure govern whether the default judgment should be set aside pursuant to the standards set forth in the cases by this circuit. Under Rule 60. Sorry? Under the rules. Rule 60? Yes. Yes. Fifty-five. The decision whether to set aside the default judgment is, of course, governed by the factors set forth in Fulk v. Allen. There's three factors. One of those is— Why don't you—you know, the one factor that troubles me the most is whether or not there was a meritorious defense, which you just noted. I was about to move to that, Your Honor. Well, they don't claim that it was damages that this class notice consisted of damages, so they say it's a claim expense. Why isn't that right? So initially as pled, Your Honor, Pacific Source did claim that they could be damages— But they don't really seem to raise that. Okay, agreed that they don't contend that any longer. That would be a hard argument for them to make. And that's because the policy specifically excludes the cost of complying with injunctive relief as damages. And so Pacific Source concedes that that exclusion applies, and that concession is important because it's an admission as to what the nature of these costs actually are. They've been addressed by this policy, and they're specifically excluded. And so the argument that Pacific Source is making and that the district court adopted is that another provision of the policy adds back in coverage for those very same costs of complying with injunctive relief in the— Well, maybe they're different costs. Different costs. That fit within the notion of defense, you know. So claim expenses is intended to cover costs associated with the defense and investigation of the lawsuit. And so like any liability policy, you have one part that covers the cost of defending it. You have another part that covers, you know, certain costs associated with any damages awarded. The order for Pacific Source to notify the class in this case was injunctive relief. It was remedial in nature. And so it falls under the damages part of the policy. So this was a B-3—no, B-2 class action, not B-3, B-2, because it was against a defined group that everybody would receive the same benefits. So it was a B-2 class action, right? Yes, Your Honor. Right. So somebody was going to have to pay the notice cost to the class. Usually it's the plaintiff that pays the notice. So in the Gardner Act, it would be the Gardner plaintiffs. But as I understand the district court's class certification—the state trial court's class certification order, the order provided that the relief that would be—he laid out the relief that the class could potentially receive. And with that, he then—they note that the cost would be paid. Cost of notice would be paid by ASICs, if I'm not mistaken. Correct. Or by Pacific. Yes. Yeah, right. By Pacific and the state. I keep getting it confused because you have to step down one. Why—I mean, why isn't that part of the whole defense of the case? Well, I think it's because, as Your Honor indicated, that these are costs that are normally borne by the plaintiff. And as part of the analysis, as we noted in the Hunt case cited in the briefs and in the provisions of Newburgh on class actions, the costs are shifted as part of a remedial award when there's a preliminary finding that there, you know, either is liability or potential liability or likelihood of liability, you know, in a class action. And so that's when the court orders the remedy of shifting those costs to the defendant in order to undertake that burden. And, again, that issue, the costs of complying with that injunctive relief, is specifically addressed and excluded in the policy, those costs. Claim expenses, just the definition itself in the policy, has to do with the costs associated with defending and investigating the case. And so a cost shifting— I agree, you know, I kind of agree with you that investigation, this doesn't seem to fit the idea of investigation. Counsel, let me ask, if I may, if there is doubt about the defense, let's say we view it at this moment in equipoise because it's a question of law that hasn't been fully developed at this point, it seems to me, how does that factor into the Falk analysis? Is that—can it be a maybe meritorious defense as distinct from something frivolous? Or what is the standard? Do we have to find it definitively? I think it does factor into the court's analysis. This is, at bottom, an equitable inquiry, whether to overturn the default judgment. I don't think there's anything in the case law that suggests that finding that there's a meritorious defense means that you have to decide that it's a successful defense and it will prevail. The equities here indicate, particularly under the circumstances that led to this default judgment being entered, that Atlantic Specialties should have a chance to present its defense and the parties should have a chance to litigate this issue in the district court. The other question I have about the Falk analysis is that one of the factors is prejudice. The district court found no prejudice to the opposing side. To what extent—I know that all three factors are three factors, but is the lack of prejudice one that has more weight or should have more weight? I wasn't able to find any cases that really talked about that, but I wonder if you have. No, Your Honor. I'm not aware of any cases that suggest that one factor should be given necessarily any more particular weight than others. There is cases that say that the factors are disjunctive, and it's committed to the discretion of the court to make that analysis, but the court has to apply the correct legal standards in that process. And our contention is that in the process of interpreting the policy and finding that these were covered claim expenses, that it applied the incorrect legal standard, and it also applied the incorrect legal standard when in the course of the culpability or excusable neglect analysis it made no finding that there was any intentional or bad faith conduct on the part of Atlantic Specialty, which is required under MESL and TCI group. It made no finding regarding intentionality at all, and in fact the only evidence in the record is that Atlantic Specialty made clerical errors and acted in good faith and moved promptly to set the default judgment aside once it was learned. What the district court instead did is refer to Montana statutes regarding the service of process and the entry of default judgment, which don't really do anything different here, and don't govern in any event, as Your Honor has pointed out, because this isn't an issue of federal procedure governed by federal law. Let me ask you a couple other questions. So as I understand it, after that class certification notice was issued, the case proceeded to a summary judgment status. Is that correct? And the court ruled on the summary judgment. The underlying class action? In Gardner. Yes, the underlying class action. And the state trial court ruled in favor of the Gardner plaintiffs on summary judgment. Is that right, or did they settle? I will confess that I don't know that. I don't think that there's anything in the record regarding what happened. Well, there's something in ‑‑ I read in one of the documents that in light of the state trial, the judge's order in the state court action granting summary judgment, that there were attempts to settle the notice procedure. That may be, Your Honor. There was a stipulation regarding all the specifics about how the notice was going to take place. Was there anything in ‑‑ so you don't know whether there was anything in the summary judgment ruling about notice cost or anything of that nature? No. As Your Honor indicated, there was a stipulation that led to the court entering the injunctive order that required Pacific Source to provide notice. As to summary judgment, if there is something about that in the record, frankly, I can't recall, and I don't know that it bears on the issues that are under consideration here. To my knowledge, the class action is still underway and being litigated. Unless there are any other questions, I'd like to reserve my remaining time for rebuttal. Good morning. Martha Sheehy on behalf of Pacific Source. I'm going to start with your question about the Gardner action. The Gardner action has been ongoing since 2017. And Pacific Source is an insurer in that action that was accused of misapplying Montana's made whole law when settling the claims of its insurance. So this is a first party claim, class action. Pacific Source admitted liability almost from the first day of this. They had misapplied Montana's made whole action. As a result of that, Pacific Source then, of course, is interested in settling the case. The only issues left in the Gardner action are how many claimants, can they be identified, and how much in damages. So in reaching those conclusions, as so often happens in a class action suit, Gardner and Pacific Source were starting to figure out how to identify the claimants, how to pay for these things, and how to settle the claim. As a first part of that, they stipulated as to the summary judgment, basically, because Pacific Source had already admitted we messed up on the made whole analysis. So summary judgment was, in fact, granted on that stipulation. And the court entered into an order saying, now, here's what we're going to do. You're going to go find the class members, and you're going to do that by shifting the fees of the notification costs to the defendant, Pacific Source. Pacific Source is represented by an ASIC paid attorney, Bob Lukes. Mr. Lukes has consulted, as is required under Montana law, has consulted with ASIC throughout. So way back in 2018, Mr. Lukes started saying, it behooves everyone to settle this case. Here are the things that we're going to do. And you'll see in the record at ER 75 that Mr. Lukes consulted with ASIC about this settlement over the notification costs. And he said he informed them that the costs would range from $177,000 to $227,000, but we wouldn't know for sure for a while, but that the parties hoped to enter into a settlement that included Pacific Notice, Pacific Source providing those notices and with court approval. ASIC said nothing in response to that. They said, if you have any questions, we'll let you know. Three months went by, we entered into the stipulated settlement, and only after that did ASIC begin to balk at the payment of the notification costs. And you'll note that the record demonstrates that ASIC concedes that at one point, it appears that we have prior said that these costs might be claims expenses, but we're not saying that anymore. Well, the contract says what the contract says, and it seems to me a plausible reading of it, if not a required reading of it, that these costs are costs and expenses of complying with the court's award and that would therefore not be covered. Only damages that comply with the court award are not covered. The definition of claims expenses doesn't include that caveat. Well, it says any cost or expense of complying, any cost or expense of complying under the damages provision. So, I mean, it seems to me that there's at least an arguable basis for a defense. And so I'm going to ask you the same question that I asked. In the Falk analysis, when we are looking at whether there's a meritorious defense, does it have to be 100 percent? Does it have to be ironclad? Or is that something that if it's a genuine question, 50-50, needs more analysis, that that is sufficient? It is sufficient to uphold the district court's discretion. No, isn't it sufficient to say there's a meritorious defense? No, I don't think it is. So you think we'd have to find for absolute sure that there's an ironclad defense before we could say that the third factor is met? In order to hold that the district court erred in finding that there was a meritorious defense, this court has to find that Judge Morris' findings were implausible, illogical, and not supported by the record. So you can't find that because we look at the definition of claim expenses. It means the reasonable and necessary legal and expert fees and expenses incurred in the investigation, adjustment, defense, or appeal of any claim. These expenses of notification are the essential element of the adjustment of the claim. It's finding the class members. This is the way to determine how much damages are at issue. You have to go find the class members. So the policy language, there are no cases that say these are not covered. There's no other law. So looking at the definition of claim expense and looking at the district court's holding when he held, the policy's definition of claim expenses differs from the damages portion of the policy. The claims expenses section fails to exclude court-ordered expenses. Class notice costs represent a frequent interim litigation cost that defendants risk incurring when defending against a class action. Damages and claims expenses are defined differently. And because there is a plausible, logical, and supported by the record basis for the district court's decision, yes, this court should affirm that there is no meritorious defense. That's the point of the Falk factors, is when is it not necessary to put everybody back to the first stage when there has been this kind of culpable conduct resulting in a default. So in your view, it's certain that these are claims expenses, that cost of notice are claims expenses? Yes. Is that what the law requires? Yes, under Montana law. No, no, no. I think he's talking about the Falk factors. How certain do you have to be to say there's a meritorious defense? The district court's conclusion. No, no, no. Under Ninth Circuit law, when you evaluate this factor, whether there's a meritorious defense in this context, do you have to conclude absolutely that there's no meritorious defense? Or is it enough, as Judge Graber suggested a little bit earlier, well, you know, this is confusing. He's got these two provisions. How do you read them together? The way you're reading them together is one way. The way you're reading them is one way. Another way, you could read them another way. You know, not exactly 100% certain. Is that enough for purposes of showing a meritorious defense? It is because of the standard of review. The judge's conclusion on this was logical, supported by the record, and plausible. If we were to disagree with your position and the district court's ruling as to culpability, and nobody has questioned the finding of no prejudice, is your answer still the same when there's a, let's say, a serious question about a defense as distinct from a certainty of its merit? Yes, because any one factor can justify the district court's exercise of discretion in refusing to set aside the defense. Yes, but in my hypothetical, the first factor is not there, the second factor is not there, and the third factor is equivocal. You'd still have to employ the abuse of discretion standard, but I agree with you. Well, the district court seemed to suggest that, well, they were so culpable that I could stop there, but I don't want to, so I'll just mention everything else, and there's no prejudice, and besides, they don't have a defense. So if we disagreed hypothetically with the first and primary holding on culpability, where does that leave us? I would suggest that that would require a remand for the district court's decision to rebalance the factors based on your elimination of one of the factors. I would like to say that the culpability factor is so strong in favor of denying, setting aside of the default. The cases cited by ASIC don't apply to this analysis. They rely heavily on MESLI to establish that there needs to be some showing of bad faith, and they continually state that everybody agrees that there was no bad faith in this case. We don't agree with that, and MESLI doesn't stand for that. MESLI specifically distinguishes between cases involving a defaulted defendant who doesn't have counsel and cases where there is a sophisticated defendant, and I'm quoting from page 1093 of the MESLI decision, quote, when considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it intentionality, unquote. This company has conceded that it is in the business of accepting and responding to service. It is the ultimate sophisticated party. In addition, there was actual bad faith in this case. Bad faith, and I'm going to back up for a second and say, substantive law of Montana has to be applied to determining the insurance policy provisions. Federal law is for the procedure itself. Yeah, and under Montana law, you need to look at the policy provisions to favor coverage, and that's what the district court did in this case. But in addition, you need to look at Montana law to determine if bad faith existed on behalf of an insurance company. ASIC, appearing in Montana to do business, agrees to comply with the insurance code. Montana has done away with common law bad faith and replaced it with the Unfair Trade Practices Act. ASIC violated the Unfair Trade Practices Act and committed an unfair trade practice when it failed to respond promptly to an insurance claim. Five months plus another for the next service, plus another month for the next service, is not a prompt response to a complaint, and it costs us because we cannot settle the underlying claim until some of these matters are resolved. So the culpability here for an insurance company that has agreed to comply with the Montana insurance code and has flaunted it at every outset, not hiring Montana counsel, shifting us around, and originally saying these were covered, then reneging on that and saying, eh, I'm not going to cover those, not responding to the inquiry prior to the stipulation, these are all elements of bad faith. The district court didn't feel the need to go through all of that, but the district court did note, rightfully so, that ASIC failed to comply with the Montana insurance code. There's a very specific way of obtaining process against an insurance company in Montana, and it's through this registered agent. This was a process that changed in 2019 because ASIC is subject to the Montana Insurance Commissioner, and the Montana Insurance Commissioner used to accept service on behalf of all insurers. It doesn't anymore because it was having so much trouble getting them to show up. So now you serve the registered agent, and it's the only statute in Montana that, when it's regulating service through an agent, specifically states that failure to comply with the service within 30 days subjects the insurer to Montana's laws of default. This is a big deal, trying to get insurance companies to comply with the insurance code and show up in Montana. So the culpability in this matter was extreme. This is a sophisticated insurer who just didn't show up, and the idea that it's excusable because they don't know how it happened, that's ridiculous. That's their answer. We don't know what happened. They don't know what happened after it was misdirected. They don't the first time, and they don't know what happened after it was misdirected the second time. Judge Morris questioned the ASIC extensively and concluded, I have a picture in my mind of a 1950s pneumatic tube system here. What's going on? I mean, this was negligent, and ASIC didn't put on a single element of things it is doing now or before. They just basically admitted that there was negligence, a part of the worker bees that had to handle this matter. They just misidentified or didn't identify the correct insured, as I think they say. Twice. Yes. I mean, things like that happen. Yes, and the question then becomes, are they excusable? Under Montana law, which applies to insurance companies transacting business in Montana, they have to act in good faith. That's, I guess, one of the questions that I have about why state law applies to that analysis. Let's say you have the identical situation, and I'm just going to pick Nebraska. I know nothing about Nebraska. Let's say they don't have a law that is strict about insurance companies, and Montana does. The things that happen are identical. So why isn't the analysis of excusable neglect identical without reference to state law? If they're negligent, maybe state law comes down hard on them, and maybe it doesn't, but that doesn't mean that in terms of the procedure, a federal court has to also come down hard on them. I'm having trouble making that connection. Because the federal court standard is sophisticated defendants, their intentionality is presumed based on the fact that they have knowledge of the consequences of their inaction. So the bad faith element would be described under what's bad faith under Montana law. We know what it is under federal law. MESLI tells us that the intentionality is presumed because they know the consequences of their action as a sophisticated consumer. But going to that second problem of bad faith, Montana law says here's how an insurer must act in Montana, and it says it over and over with respect to the insurance company. Well, I guess I don't understand still why a sophisticated insurer in Montana would be treated differently for federal procedural purposes than a sophisticated insurance company in some other state. Oh, I'm glad to clarify that. They should develop the Ninth Circuit. That's what I was struggling with. I apologize for the lack of clarity in my question. MESLI stands for the proposition throughout the Ninth Circuit that intentionality can be presumed for the sophisticated defendant. I think I might be over. I'd like to close by just noticing that in the last brief, the reply brief, ASIC argued for the first time that the declaratory judgment action for attorney's fees does not apply, and this Court has held over and over again that that's not exactly right. In Northern v. Rule, state laws awarding attorney's fees are generally considered to be substantive laws under the Erie Doctrine and apply to actions pending in federal district court when the fee award is connected to the substance of the case. Price v. Seidel, a federal court sitting in diversity, applies state law in deciding whether to allow attorney's fees when those fees are connected to the substance of the case. And in Dowson v. Scottsdale, this Court affirmed the district court's award of attorney's fees pursuant to Montana declaratory action exception to the American Rule, specifically citing to 27.8.313, and I will submit a 28J with those citations in it. So we request that this Court affirm the district court's determination and remand for determination of the amounts of the fees. Thank you, counsel. Your Honors, with respect to the culpability issue in the Messley case, the issue of the sophisticated insured, what that case and other cases in this circuit say is that when you do have a sophisticated insured, a district court may presume intentionality when there's a failure to timely respond. It's may, so it's discretionary, and it is, in effect, a rebuttable presumption, which Atlantic Specialty rebutted by submitting the declaration in this keratin that indicated that this was simply clerical errors, and as Your Honor noted, one of these things that happen that are unfortunate, but they do happen. And so in any event, the district court never made any finding in its order denying the motion to set aside that it was applying that presumption and imputing intentional conduct to Atlantic Specialty. It never addressed that issue at all. There still is no evidence in the record that would support a finding of intentionality. We would argue, I won't rehash it again, but Montana law does not govern here when it comes to determining what the standards of excusable neglect are and bad faith and intentional conduct for purposes of the excusable neglect analysis. On the issue of the merits of the defense and what must be proven specifically, I would note that we take issue with the argument that reviewing the district court's interpretation of the policy language is subject to an abuse of discretion standard and that the interpretation needs to be illogical or implausible. That is application of a legal standard application of Montana law regarding how you interpret unambiguous policy language and how you read insurance policies as a whole. That's subject to a de novo review standard. Again, there is no case law that I am aware of that suggests that this court has to find that Atlantic Specialty necessarily will prevail on its defenses. It's enough that there is a meritorious defense that deserves consideration rather than being resolved through a default judgment. In your view, the question is how you read these two provisions together or how they should be read? Correct. Montana requires that insurance policy provisions be read as a whole and be harmonized. And so, again, what Pacific Source is attempting to do here is take a type of cost that's specifically excluded under the definition of damages and argue that that coverage is given right back under the definition of claim expenses. That's inconsistent with Montana law requiring those two provisions to be read in harmony. Your Honor, with respect to the issues raised about defense counsel for Pacific Source notifying ASIC that Pacific Source was going to stipulate to liability and enter into this stipulation that resulted in the costs being awarded, this is essentially making a waiver and a stop all argument that wasn't pled in the complaint. It wasn't addressed at all when the court entered default judgment. It wasn't a basis for that default judgment. And what we have here is that we have the ordinary situation where a defense counsel whose fees are being paid by an insurer is reporting to the insurer about what's going on in the case, which is required and has to happen. But to suggest that providing those updates and asking do you have any objection with this defense strategy is that defense counsel going to the insurer and saying will these costs be covered? Can you make a coverage determination of whether these costs will be covered? That is not what happened here. That's not supported by the record. It would be far outside of the ordinary circumstance given the tripartite relationship. He was defense counsel. He's not coverage counsel for Pacific Source, so he can't make that request. There's nothing in the record to suggest that during those course of communications, Atlantic Specialty committed or even hinted that these costs might be covered by its policy. And there's certainly nothing in the record that was submitted by a representative of Pacific Source, you know, say, saying, you know, our expectation was as a result of these communications that these class notification costs would be covered, and we wouldn't have entered into the stipulation if it hadn't been for that expectation. Those are the kind of facts you would need to support the type of estoppel claim that's being made in the course of that argument. I see my time is up, so unless there are any other questions. I don't have any more. No questions. There are no questions. So then that case shall now be submitted. And I thank counsel on both sides of the case for their arguments. All rise.
judges: GRABER, GOULD, PAEZ